Good afternoon, your honor. I'm Gary Ducliffe on behalf of Elvin Valenzuela Woods. I would like to reserve a couple of minutes for a rebuttal. First, let me say I'm very grateful for being afforded an oral argument in a case touched by the icy cold fingers of the EDPA. I know I've had to overcome a lot of hurdles to get to even this point, and hopefully I can use these last few minutes to overcome any other hurdles that might still be in front of me. The case raises a question of procedural due process, and the only thing we're asking for is fair process in the answering of that question. Now, can you help me on something here? Sure. And if you prevailed, the defendant would not be paroled as far as I can see. He'd get a new parole hearing in front of you, not unbiased, and you're not restricted to assuming that you're proven of biases. Is that right, Mr. Carter? That's absolutely correct. Now, the question that that raises for me is did he already get that? Did he get a subsequent parole hearing without Ferguson presiding at the hearing? Yes, he did, as the attorney general. The California attorney general's argument is to find a case that's moved, and I responded to that in my reply brief. And he wants to know more about why he hasn't already gotten what he seeks. Well, number one, we have no idea whether he, in fact, got another hearing in front of an impartial panel. We know Ferguson wasn't on it, but, as I said, I agree that's not the definition of a constitutional controversy, and there's nothing in the record. Well, we wouldn't supervise the panel. All we'd do is issue something saying, well, another parole hearing for this felon is Ferguson wasn't there. But I don't know what we could do that he hasn't already been done. Well, this court wouldn't even order a parole hearing if it ruled in my favor. The only thing I'm asking for is if it were handed to the district court so that I could have the evidentiary hearing to prove my claim, and the district court could order a subsequent parole consideration hearing in front of an impartial panel, and they can maintain jurisdiction to review the hearing. Why is there any reason to think that he has not already had a subsequent parole hearing before an impartial panel? Well, my point is we don't know anything about the impartiality. So, primarily, you presume that things are done in accordance with law. Well, it looks like they weren't done in accordance with law in this case. On the Ferguson hearing, but on the second one, all we have to go on, since we know nothing, is the usual presumption. Right. So, what I said in my brief is the burden of proving who this is on is on the California Attorney General. It's a heavy burden. And when the record is silent about the impartiality of the intervening… We should assume. So, you're saying that if we know nothing, we should assume that all parole board hearings are tainted by impartiality So, I'm not saying that. I don't believe it's an assumption. It's necessary to grant the relief that I'm asking for. I think it is, as you've argued, and that's why I'm giving you a chance to educate me so that I can correct you. Well, first of all, I've cited, you know, 10 to 15 district court cases that have ruled, and as I'm urging this court to rule, that an intervening parole hearing, which they knew nothing about, did not render the court moved. The other side has not come up with a single case that ruled in the opposite direction. Do you have any circuit court authority? I mean, a lot of your authority is no authority at all in some published district court cases. Well, some of that are published district court cases, one of which was from Judge Nguyen of this court, and then I cited an unpublished Ninth Circuit case, and that's what's out there, you know. So, it's not like… You have no circuit court authority because you're waiting. Except for the unpublished decision from this court. So, we're not bound by that. It's persuasive authority I've presented it as. You don't have enough factual explanation and legal explanation to make them useful for the system, and that's why we don't cite them. Right, but it's clear on the face of that unpublished Ninth Circuit decision that they did not find the intervening parole hearing to have rendered the case moved, and in the test, it seems to be dissatisfied in the circumstances of this case. I believe that an actual injury suffered by the petitioner is traceable to the California Parole Board, and this court can order a remedy for the district court hearing. There's a sixth case you didn't say on your name. Yes. Do you recall it thoroughly in the Holy Avenue, Beverly Piers, section 19HB9? Yes, I can't argue with this court about that. The convincingness of the majority opinion, and as I say, this panel is bound by that. So the question is, does it apply? And, you know, I was getting ready for this argument. Judge Wardlaw, you were on the panel. It was reversed by Swarthout v. Cook, and Judge Kleinfeld wrote the majority on bank opinion in Abel v. Marshall that was overruled by Swarthout v. Cook, and it turns out, and it scores out, that my belief provides the definitive answer to that question in the overruling, in the overturning. The court said that the federal due process clause provides minimal procedural protections. But it did. Those protections are extraordinarily minimal. What we said in Adams is that when he's not, when you're claiming that it's not going to be immediately released, it's not going to affect his custodial status, but rather his condition of the complainant, which sounds like a moral theory to me, that you need to file an 1983 claim if he were to die within less than a day. Could we move ahead and have you attempt to stage an 1983 claim, or do you want to? I believe it would be very difficult for me to make that attempt and bring by an 1983 claim on this late date, but let me just read to the court. I don't understand why you're not just stuck with 1983, viable or non-viable, on your nails. Right, because nails can't overrule a statement or a ruling of the Supreme Court. But we're bound by non-certain authority unless an intervening Supreme Court case is clearly reconcilable with it. All right. Excuse me. Go ahead. I'm interested in the Nails Court developing a rule in addressing a claim that the petitioner was denied to process as a prison disciplinary hearing. I present it to the court's loan district court case that's discussed in the very context that I'm talking about, which is a claim of a biased adjudicator and a bottom. Negative 4th out came first. Nails came second. What that means is we would have to say Nails is wrong if the 4th out to go your way helps you and not by Nails. I'm not quite sure if that's true. Because just the 4th out, I can see what argument you're trying to make there. You're saying it doesn't meet the minimum because there was a biased adjudicator. It fails to meet the minimum multi-process protections that the Supreme Court set out as the 4th out. Isn't that what you're saying? Yes. Okay. But isn't that, given that he's not going to be immediately released, how does that change Nails' requirement that you bring that claim as a 1983 claim? If the court decides that Nails controls, obviously I can't meet that test. I can see that. The relief we're seeking will not be speedier. I don't know why you're conceding or that you couldn't bring a 1983 claim. Well, I don't know what's going to happen because the court sends it back with instructions to allow me to do a mandate or to do something to bring a 1983 claim. I don't know if I'm going to be successful. I raise the point about the statute. The constitutional right would be that there are minimal procedural safeguards. The 4th out, wouldn't that be the clear constitutional right? Yes, but I just want to make the point that the 4th out says this. With respect to examining the minimal due process protections that the due process clause provides, that should have been the beginning and the end of the federal habeas court's inquiry. The Supreme Court, like every federal court, has a substantial obligation to question subject matter jurisdiction. In the case of the 4th out, it was a habeas case. They had an obligation to say they had no jurisdiction, and they said not only did they not question their subject matter jurisdiction, but they say that's within the inquiry that federal habeas courts can make. So, the fact that Nettles, in a different factual context, comes up with this test, you know, I just, the 4th out seems more on point, and it seems to me the court is just bound by 4th out, as it is by Nettles. If not more, since I'll reserve the 4th out, because I don't want to thank you. Good afternoon. Please declare. Deputy Attorney General Brian Kinney appeared on behalf of the respondent. This court should dismiss Mr. Woods' appeal for two reasons. First, Mr. Woods' 2012 bias claim became moved when he was sued in New Brunswick in 2015 in front of a different appeal. And second, Mr. Woods' bias claim, even if he is successful, does not establish federal habeas jurisdiction because the plea received is a new hearing, which does not guarantee him a creative parole hearing to be released. The best I can get out of Dave Collins' argument is that he might get yet another parole hearing before another bar, and you never know what's going to happen, even if he wasn't smitten for another parole hearing. Why wouldn't that defeat Mr. Woods? Mr. Woods didn't receive already another parole hearing, and there's been no allocation that that appeal was improper, a bias, or a bias against Mr. Woods. There's a presumption that all adjudicators proceed with honesty and integrity. I don't know if evidence or allegations thinks that as of 2012, he received anything as a biased adjudicator. I assume Mr. Woods had established a violation, and then also that these slash allegations were correct, even if this one particular instance that there was a biased adjudicator does not show Mr. Woods' burden, that there's a reasonable expectation that this will happen again. This is a one-time thing. If it did happen, and he's put no evidence to the record to suggest that doing that usually isn't expected. This would occur again with a large bias against Mr. Woods. It's how some of your hearing doesn't state, you know, say, well, as long as every other hearing is, of course, a due process for opening. I'll tell you what, I mean, the claim in this particular case is very specific about pecuniary interests or a pending job application or probably the part of one commissioner that no longer works. So I understand you're arguing that the 2015 hearing mooted all the potential claims. My question is, if some person discovered that they had a hearing in 2010, which they were entitled to before a biased appeal, but in 2013 they got a hearing before an unbiased appeal, and in 2015 they have a new claim that was biased, at some point, say, it has to be resolved that their procedures produce unbiased channels. Otherwise, you say, well, as long as they go once in a while, we're okay, we've mooted all the procedural defects of the earlier hearings. Correct, Your Honor. But once it's been established that he did receive a new hearing, the claim is moot, and then Mr. Woods has to proceed under an exception to the mootness requirement, and the exception required is his burden to prove that there is a reasonable expectation that we can think that this same injury, a biased adjudicator with a pitted job application, with the district attorney's offices that appear, is likely to happen to Mr. Woods, specifically to Mr. Woods, the same claim party. Even if we assume that this potentially could happen as a future date to some prisoner, that is not sufficient to meet the burden Mr. Woods asked with regard to mootness and the exception that he invokes. Is it right that Ferguson could no longer sit and did no longer sit at his second hearing because he sat with a different agency than he always would have with the judge or DA's offices? That's correct, Your Honor. At the time, when the petition was filed in the state court, he was already at the district attorney's office. I'm not aware of where he is now, but he's no longer with the board. How do you respond to his claim under Spordow that this procedure with the biased, allegedly biased, hearing officer doesn't meet any general standards of due process costs outlined in Spordow by the Supreme Court? From what I understand, Mr. Delcock's making the argument that Spordow v. Cook implicitly endorsed habeas challenges against paroled decisions. Spordow v. Cook did not address this specific issue whether or not it's properly brought in habeas. Moreover, Spordow v. Cook with regard to a paroled decision and challenging the actual result of that decision challenged some evidence standard or review. Here, Mr. Boyce is not challenging the actual decision. He's challenging the partiality of the panel. And that is obviously procedural flaw that would entitle to a new hearing, not the same type of remedy you would get if you could establish that the decision of the parole panel was wrong. Unless this court has any further questions. Cynthia, if you have any questions, yeah, go ahead. Thank you. A couple of quick points to this. You know, I quoted a statement of a witness from the Carrick Tribe of California that was made by this court in which the court said, as you've seen, the case has moved in the late stages of appeal. It's justified holding when it is absolutely clear that the litigant no longer has any need of the judicial protection that he sought. So, there's absolutely, the burden is not on me to prove that Mr. Boyce will always get an impartial parole hearing from now on. The burden is on them, and the record is silent. And as far as the court, I was explicitly enforcing it. They made the explicit statements that I presented to the court. And as I said, they have a corresponding obligation not to decide the case if there was any question about its jurisdiction. I think that there's no further questions. Thank you.
judges: Kleinfeld, Wardlaw, Morris